# City of Pittston Redevelopment Authority Appeal

*Kenneth English*, for appellant.

*Joseph V. Kasper*, for respondent.

PINOLA, P. J., October 19, 1967.—This is an appeal of the Redevelopment Authority of the City of Pittston (hereinafter called the "authority"), from the refusal of the board for the assessment and revision of taxes (hereinafter called the "board") to recognize the use of certain property as a public use entitling it to exemption from assessment and taxation.

The authority was organized and exists under the Urban Redevelopment Act of May 25, 1945, P. L. 991, 35 PS §1701-19, and its supplements and amendments.

In pursuance of said act and to accomplish the purposes of its organization and planning, the authority acquired certain properties from Medico Industries, Inc., located on Tompkins Street and on Wharf Street, and used by Medico in its operation as an industrial concern.

From the evidence we make the following

FINDINGS OF FACT

1. The Redevelopment Authority of the City of Pittston was organized and exists by virtue of the Urban Redevelopment Act of May 25, 1945, P. L. 991, and its supplements and amendments, and is a public body.

2. The Constitution of the Commonwealth of Pennsylvania under article 9, sec. 1, exempts from taxation public property used for public purposes.

3. On October 15, 1965, appellant acquired the real estate of Medico Industries, Inc., on Tompkins Street, Pittston, Pa., by purchase from the owner for the sum of $428,000, and also purchased the machinery and equipment of said owner for $195,000, for a total sum of $627,000.

4. Following the sale, the owner was allowed to occupy the premises free of any charge for rent for a period of two months.

5. On December 15, 1965, an occupancy agreement between the authority and the former owner was entered into permitting the owner to occupy said premises from month to month at a rental of $2,139 per month, with all rights under said agreement terminable upon 30 days written notice to occupants.

6. The occupancy agreement entered into by the parties did not provide any payment on the part of the former owner for any property taxes that may be assessed.

7. The Redevelopment Authority of the City of Pittston, under the occupancy agreement, accommodated Medico Industries, Inc., until they could make their own provisions for occupancy of a building that they were constructing.

8. Since the date of acquisition of the Medico Industries, Inc., property to the present date, Medico Industries, Inc., have been unable, for various bona

fide building difficulties, to remove themselves from the lands owned by the Redevelopment Authority of the City of Pittston.

9. The Medico plant comprised five buildings, two of which were equipped with overhead cranes and the facilities for handling heavy equipment. The plant is an industrial enterprise in which the owner manufactured, assembled, built and designed government and civilian equipment, defense production, tool and die makers and fabrication.

10. The five buildings occupy 45,000 to 50,000 square feet, and payrolls amount to $80,000 per month.

11. The owner had started planning and designing a new building to be constructed on land of the owner on Route 315, Plains Township, approximately seven months before appellant purchased the company plant, but subsurface problems were encountered after work was started on the construction of the new plant in June 1965, when, after 70 percent of the digging for foundations had been completed, voids caused by mining were uncovered, bringing a holdup on the job and requiring the drilling and flushing of the whole area where the building was to be located; the problem of getting water to flush the voids and the flushing itself delayed the foundation walls and steel construction for four and one-half months.

12. Estimates of 12 to 13 months for completion of buildings were completely upset when the time of three and one-half to four months anticipated for electrical installation was extended to seven and one-half months when the contractor failed to meet time requirements. An additional six to eight weeks was lost through inability to secure copper for construction, the result being that there was a total delay of 11 to 13 months due to these unforeseen events.

13. The owner was engaged in manufacturing component parts for army tanks, war head jobs for shells

for Vietnam and escape hatches for army tanks. The war heads contracts alone amounted to $3,500,000.

14. Medico Industries, Inc., does not perform any services for the Redevelopment Authority of the City of Pittston.

15. The rental of $2,139 represents one-half of one percent of the purchase price of the real estate as required under regulations governing rent rates as prescribed by the Housing and Home Finance Agency, Urban Renewal Administration, U. S. A.

16. The relation between the authority as landlord and Medico as occupant arose by reason of the necessities of the occasion and not by reason of any profit seeking on the part of the authority or any preferential treatment or accommodation on the part of Medico.

17. The property in question is devoted to private use or purpose.

### DISCUSSION

In deciding any question of tax exemption, the starting point is always the provisions of the Constitution of the Commonwealth. Under article 9, sec. 1, of the Constitution, the General Assembly, "may, by general laws, exempt from taxation public property used for public purposes . . ."

Under section 15 of the Municipal Authorities Act of May 2, 1945, P. L. 382, 53 PS §318, authorities "shall not be required to pay any taxes or assessments upon any property acquired or used by them for such purposes".

The Urban Redevelopment Act of 1945 does not contain any exemption from taxation. However, the concluding paragraph of section 2 declares the policy of the Commonwealth in the creation of redevelopment authorities, and that such authorities "shall exist and operate for the public purposes" therein stated. It further states: "such purposes are hereby declared to be public uses . . ."

It does not follow from the mere statement in the act that the use is a public use, that the property qualifies for tax exemption.

Chief Justice Stern declared in West View Borough Municipal Authority Appeal, 381 Pa. 416, 420, that, "(W)hile a declaration by the legislature as to the existence of a public purpose is entitled to prima facie acceptance as to its correctness, it is not conclusive, it being a judicial question for the ultimate determination of the courts as to whether a proposed use is a public one".

At the outset, we must remember that the burden to claim and prove the right to exemption is upon the appellant: Blue Cross Appeal, 416 Pa. 574.

It would appear that the authority must rely on the General County Assessment Law and the Municipal Authorities Act as the bases for its claim to exemption.

The general act, Act of May 22, 1933, P. L. 853, sec. 204, as amended, 72 PS §5020-204, declares the property which shall be exempt from taxation. Paragraph (g) reads as follows:

"All other public property used for public purposes, with the ground thereto annexed and necessary for the occupancy and enjoyment of the same, but this shall not be construed to include property otherwise taxable which is owned or held by an agency of the Government of the United States".

Section 15 of the Municipal Authorities Act appears supra.

How do these acts apply to the facts before us? The key to the situation is to be found in the decision by Chief Justice Stern in West View Borough Municipal Authority Appeal, supra. There, a borough building was used in part by the authority and in part by tenants. He said, page 420:

"The controlling test is not merely whether the property or part of it has been rented out, but whether the use of the part so leased is for a public or private purpose. It is the use of the property, and not the use of the proceeds from the property, which determines whether tax exemption may constitutionally be granted".

Although the purpose of the lease arrangement here is laudable and necessary in order to accommodate the former owner, the property acquired by the authority is being used for a private purpose.

In West View Borough Authority Tax Case, 175 Pa. Superior Ct. 641, the authority had acquired some land for future expansion of water works. A frame dwelling located upon the land was rented to a tenant, who paid rent at the rate of $50 per month. The court held that the property was assessable for tax purposes.

In Erie Parking Authority Appeal, 17 D. & C. 2d 736, the authority acquired land upon which there was a building occupied and used by a private club. Although the club paid no rent, because the property was used for a private purpose, the court held that it was subject to taxation. Judge Laub properly said, page 740:

"Had [the Authority] decided to permit the club to remain for the period in question, it might easily have protected itself by requiring the club as a prerequisite to occupancy to pay the taxes for the year 1958".

So, here the authority should have given attention to its tax liability before entering into the lease.

From the findings of fact, we reach the following

CONCLUSIONS OF LAW

1. The property in question is being used for private purposes.

2. The property in question is not entitled to exemption from taxation.

Accordingly, we enter the following

ORDER NISI

Now, October 19, 1967, the appeal of the Redevelopment Authority of the City of Pittston from the assessment for the year 1966 of property designated in the petition is dismissed and the assessment is affirmed.

Each party to pay its own costs.

This order shall be entered by the prothonotary as an order nisi and shall become the final order of the court unless exceptions are filed hereto within 20 days from this date.